IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| SHARON TOMKIEWICZ, | ) CASE NO. 05-81539-G3-13 |
| | ) |
| Debtor | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

The court has considered the Objection To Claim of 21st Mortgage Corporation (Docket No. 12) filed by Sharon Tomkiewicz ("Debtor"), and the Response (Docket No. 18) thereto filed by 21st Mortgage Corporation ("Creditor"). After review of the file, pleadings, evidence and argument of counsel, the court values the collateral of Creditor at $19,992 with 7.75% interest for purposes of determining the secured amount of Creditor's claim. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered simultaneously with this Memorandum Opinion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

1. Debtor filed a voluntary Chapter 13 petition on June 1, 2005 along with her Statement of Financial Affairs and original Chapter 13 Plan. Docket Nos. 1 - 3.

2. Creditor is the holder of a secured claim against the Debtor pursuant to a Retail Installment Sales Contract and a security interest in a 1998 Redman Homes "Riviera" manufactured home, 16' x 76', Serial Number 12328187, together with all furnishings, fixtures and appliances ("Home").  Creditor Exhibit No. 1.  Creditor filed a Proof of Claim in the amount of $38,818.20 with 12.82% interest.  In Debtor's proposed Chapter 13 plan she values the Home at $19,992.00 and proposes to pay 6% interest on the claim.  Docket No. 3.

3. Debtor requests that the court determine the secured value of the Home to be no more than $19,992.00, or such lower amount as proved, and find that the remainder of Creditor's claim is unsecured.  Creditor contends that Debtor's valuation of the collateral is well below fair market value and the proposed interest rate is substantially lower than prevailing interest rates.

4. On behalf of Debtor, Chad Rogers, who values manufactured housing professionally, testified that the Home has a value of $17,800.  Debtor's Exhibit A.  The bases for Rogers' opinion were the NADA Manufactured Housing Appraisal Guide, May through August 2005; review of photographs; and a physical inspection he conducted on September 15, 2005.  Debtor's Exhibit B-1.

5. Rogers testified and his appraisal reflects that he considered the Home to be in fair condition but that a number of repairs were necessary. He testified that the NADA Appraisal Guide provides for the application of adjustments to value based upon the current condition of a manufactured home. In the instant case, the initial base value, $19,992.00, was reduced since the Home was considered to be in fair condition, resulting in an adjusted value of $16,892. The court notes that the NADA Appraisal Guide defines a home in "fair" condition as one which has minor deterioration apparent due to both the climate and the deferred maintenance, less attractive but obviously useful. Rogers also reduced the value by approximately $5,632 for the cost of repairs.

6. Conversely, adjustments increasing the value are made in conjunction with the type of components and accessories that are included in the manufactured home. Rogers added approximately $7,209.00 to the value for components, accessories and optional equipment. This resulted in a total adjusted value of $17,800.00.

7. The Creditor also had the collateral appraised. Lawrence Cook, who has been appraising real estate for approximately 18 months, used the same base value as Rogers, $19,992. Cook adjusted the value upward by approximately $5,782 for components and accessories. Cook assessed the

collateral as being in "good" condition which is defined by the NADA Appraisal Guide as normal wear and tear visible, but home is well maintained, still attractive, desirable and useful. Cook's appraisal did not refer to or take into account repairs or the costs thereof. Cook concluded that the estimated market value of the collateral was $24,844. Creditor's Exhibit No. 3.

8. The repairs noted by Rogers included, but are not limited to, replacement of sections of vinyl siding, vinyl flooring, sheetrock, storm window glass, kitchen cabinet doors, overn door, shower stall and hardware, electrical outlets and light switch. Additionally, he recommended painting to cover wall stains. Rogers itemized each proposed repair with its cost. Debtor's Exhibit A and B-1.

9. The NADA Appraisal Guide suggests, and the United States Supreme Court has determined, that certain adjustments shall be made to the value of collateral in relation to the value of items the debtor does not receive when he retains the collateral, such as warranties, repairs and reconditioning. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

10. After review of photographs of the Home, Debtor's Exhibit B-1, and Rogers' testimony, the court finds that the Home is in fair condition, at best. The listed repairs and the costs to complete them substantiate that considerable work would have

to be done to rectify the Home's current deficiencies.

11. The valuation process is not an exact science and valuation determinations are often based on estimates and approximations, and to some extent, speculation. Considering the circumstances of the instant case, including the value of Debtor's proposed use (retention of the collateral), the analysis of the appraisers, the extent of the damage to the Home, and the necessity for repairs, the court finds that Debtor's 1998 Redman Riviera Home together with all furnishings, fixtures and appliances is valued at $19,992.00.

12. The contract rate of interest on Debtor's loan is 12.82%. The court is concerned that Creditor receive compensation in exchange for the present right to foreclose and liquidate its position. The court notes that the Federal Funds Rate is the primary tool that the Federal Open Market Committee uses to influence interest rates and the economy. Changes in the Federal Funds rate have far-reaching effects by influencing the borrowing cost of banks in the overnight lending market, and subsequently the returns offered on bank deposit products such as certificates of deposit, savings accounts, and money market accounts. Changes in the Federal Funds rate and the Discount Rate also dictate changes in the Wall Street Journal Prime Rate. The prime rate is the underlying index for most credit cards, home equity loans and lines of credit, auto loans, and personal

loans.  The prime interest rate by the Wall Street Journal as of February 8, 2006 is 7.5%.  In order to compensate Creditor and in light of current market conditions, the court finds that 7.75% interest is reasonable.  *See Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

## Conclusions of Law

1.  When a proof of claim in bankruptcy is filed, the party filing the claim is presumed to have made a prima facie case against the debtor's assets.  *In re Fidelity Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).  The objecting party must produce evidence rebutting the presumption raised by the proof of claim.  *Id*.  If such evidence is produced, the party filing the claim must then prove by a preponderance of the evidence the validity of the claim.  *Id*.  The claiming party, through this process, bears the ultimate burden of proof.  Id. Accord *In re Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143-1144 (5th Cir. 1987) and *In re Joseph A. Burger*, 125 B.R. 894, 902 (Bankr. D. Del. 1991).

2.  Once the Objector rebuts the prima facie case, it is up to the claimant to come forward with his evidence to substantiate his claim by a preponderance.  The Objector can rebut the prima facie validity of the proof of claim with specific and detailed allegations to put the matter at issue and to shift the burden of proof.

6

3. Section 506(a) provides that an allowed claim is a secured claim only to the extent "of the value of such creditor's interest in the estate's interest in property..." Thus, section 506(a) directs a determination of (i) the estate's interest in the collateral to be valued, and (ii) the creditor's interest in that interest.

4. Once the court has identified the creditor's interest in the estate's interest in the collateral, the court must then determine the relevant valuation standard to be applied in valuing the creditor's interest. Section 506(a) instructs the court to consider the purpose of the valuation and the proposed disposition of the collateral.

5. The purpose of the valuation in this case is to determine how much the Debtor has to pay the secured creditor in order to confirm her plan in accordance with 11 U.S.C. § 1325(a)(5). The proposed disposition is the debtor's continued retention and use of the home in order to be able to fund the plan. See 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) and cases cited therein.

6. For purposes of determining the amount that must be paid to a secured creditor under a plan when Debtor retains the collateral, the question of value under section 506(a) turns on the value of the debtor's proposed use of the relevant

7

property under the plan, not the value achievable in a foreclosure scenario that is not proposed, even though the reorganization may ultimately fail and the creditor may foreclose on its collateral as a result.  *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

7.   The Supreme Court determined that the appropriate method of valuation is the hypothetical purchase method, defined as replacement value measured at what the debtor must pay for like property of the same condition and age.  However, the Supreme Court did not specify particulars:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to the bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented.  Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.

*Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 (1997).

8.   The Supreme Court in *Rash* recognized the concern that a creditor receive compensation and protection in exchange for the tangible loss of valuable nonbankruptcy rights, such as the present right to foreclose and liquidate its position. Although the collateral being valued in *Rash* was a vehicle, the Supreme Court's focus was on the appropriate standard to use to measure the value of the creditor's allowed secured claim with respect to property that the debtor proposed to retain during the

8

term of its plan. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962-63, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148, 158 (1997); See 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005).

9.  Similarly, in valuing collateral that the debtor proposes to retain and use in the cram down context, the bankruptcy court may have to adjust its determination to the extent that it reflects "the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965 n.6, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 n.6 (1997).

10. Determinations of value in the bankruptcy context do not rise to the level of "mathematical certitude." *Consolidated Rock Prods. Co., v. Du Bois*, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Even when opined upon by experts, valuation determinations often "depend on assumptions, predictions, and, to some extent, speculation." *See In re EFH Grove Tower Assocs.*, 105 B.R. 310, 314 (Bankr. E.D.N.C. 1989); *see also In re Simmons*, 113 B.R. 942, 947 (Bankr. W.D.Tex. 1990).

11. A separate Judgment will be entered sustaining in part the Debtor's Objection to Claim of 21st Mortgage Corporation and valuing the 1998 Redman Homes "Riviera" manufactured home, 16' x 76', Serial Number 12328187, together with all furnishings,

9

fixtures and appliances at $19,992.00, with interest at the rate of 7.75% for purposes of determining the secured amount of 21st Mortgage Corporation's claim.

Signed at Houston, Texas on this 27th day of February, 2006.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE